**TOSTRUD LAW GROUP, P.C.**
Jon A. Tostrud (CA Bar No. 199502)
  *jtostrud@tostrudlaw.com*
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato (#319767)
  *fortunato@bespc.com*
885 Third Avenue, Suite 3040
New York, New York 10022
Telephone: (212) 308-5858
Facsimile: (212) 486-0462

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DIMITRULA HENSON, Derivatively on Behalf of EKSO BIONICS HOLDINGS, INC., | ) Case No. 18-03466 )<br>)<br>) |
| Plaintiff, | ) VERIFIED STOCKHOLDER |
| v. | ) DERIVATIVE COMPLAINT<br>) |
| JACK PEURACH, RUSS ANGOLD, MAXIMILIAN F. SCHEDER-BIESCHIN, MARILYN HAMILTON, STEVEN SHERMAN, STANLEY STERN, TED WANG, THOMAS LOOBY, HOWARD PALEFSKY, and AMY WENDELL, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| -and- | )<br>) <u>DEMAND FOR JURY TRIAL</u> |
| EKSO BIONICS HOLDINGS, INC., a Nevada Corporation, | )<br>)<br>) |
| Nominal Defendant. | )<br>) |

Plaintiff Dimitrula Henson ("Plaintiff"), by and through his undersigned counsel, brings this Verified Stockholder Derivative Complaint on behalf of nominal defendant Ekso Bionics

---

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Holdings, Inc. ("Ekso" or the "Company") against certain directors and/or officers of Ekso. Plaintiff bases his allegations on personal knowledge as to his own acts, and on information and belief as to all other allegations, based upon due investigation by counsel, including, but not limited to: (i) review and analysis of public filings made by the Company with the U.S. Securities and Exchange Commission ("SEC"), (ii) press releases issued and disseminated by Ekso; (iii) court filings in the related consolidated securities class action lawsuits alleging violations of the federal securities law based on similar facts and circumstances alleged herein, styled *Cheehy v. Ekso Bionics Holdings, Inc., et al.*¸No. 18-cv-00212-CRB, and *Bekhet v. Ekso Bionics Holdings, Inc., et al.*, No. 18-cv-01726-CRB, which are currently pending in the United States District Court of the Northern District of California (the "Securities Class Actions"), and (iv) articles, financial statements, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by Plaintiff, a stockholder of Ekso, on behalf of the Company against certain directors and officers of Ekso (defined below as the "Individual Defendants").   Plaintiff seeks to remedy the Individual Defendants' breaches of fiduciary duties that have caused and continue to cause substantial monetary losses to Ekso and other damages, including damages to its reputation and goodwill.

2.      From January 1, 2016 to December 14, 2017 (the "Relevant Period"), the Individual Defendants caused or allowed Ekso to maintain inadequate internal controls over financial reporting and to issue or make materially false and misleading statements concerning the Company's business operations, inventory, and financial condition.   Additionally, the Individual Defendants caused or allowed Ekso to file false and misleading statements with the SEC.

3.      Ekso is a developer of exoskeleton technology that has applications in healthcare and industrial markets.  Ekso focuses on what it calls rehabilitation robotics, which leverages its exoskeleton technology to develop and market products intended to enable patients with some form of lower limb paralysis to rehabilitate earlier than the existing standard of care.  Ekso's

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1  primary product is called EksoGT, which deploys a technology known as "SmartAssist" to help
2  users of EksoGT walk by providing power to either side of their body.

3      4.      As was later revealed, throughout 2016 the Individual Defendants caused or
4  allowed Ekso to have material weakness in its internal controls over information technology and
5  financial reporting by maintaining a deficiency related to its information technology general
6  controls and segregation of duties.  Specifically, the Individual Defendants caused or allowed
7  Ekso to fail to design and maintain processes and procedures that restrict access to key financial
8  systems and records to appropriate users, and also failed to appropriately evaluate whether there
9  was an adequate segregation of duties.

10     5.      Throughout 2017, the Individual Defendants repeatedly caused Ekso to file
11  reports with the SEC stating that it maintained adequate internal controls over financial reporting
12  and that no changes in that area had taken place.

13     6.      Then, on December 14, 2017, Ekso disclosed to the public in a Form 8-K filed
14  with the SEC that its auditor OUM & Co. LLP ("OUM") had notified Ekso of a material
15  weakness in EKSO's internal control over its financial reporting.  OUM had initially audited and
16  signed off on EKSO's financials for its 2016 annual report on Form 10-K filed with the SEC on
17  March 15, 2017 (the "2016 Annual Report"), but subsequently reevaluated its opinion when
18  OUM's audit was inspected by the Public Company Accounting Oversight Board.  When OUM
19  reevaluated Ekso's information technology controls, it found a material weakness.  The Form 8-
20  K further disclosed that after consulting with OUM, management also concluded that Ekso's
21  internal control over financial reporting was ineffective and accordingly, the Company's
22  disclosures were also deficient.

23     7.      In the December 14, 2017 disclosure, Ekso also claimed that over the course of
24  2017 it had been working to strengthen its internal controls over financial reporting and that it
25  had implemented a "more robust" accounting and enterprise resource system with software
26  provided by Infor, which became operational in November 2017.  Ekso also announced that it
27  would amend its 2016 annual report as well as quarterly reports in 2017.

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

8. After the December 14, 2017 disclosure, Ekso's stock dropped over 6% to close at $2.28 the following day. Previously, Ekso's stock had closed at a high of $4.13 on November 21, 2017.

9. On December 27, 2017, Ekso filed an amended 2016 Annual Report and amended quarterly reports for the first three quarters of 2017. These restatements caused Ekso's stock price to fall over 13% that day and it has not recovered since.

10. The Individual Defendants breached their fiduciary duties of loyalty, good faith, care, and candor by willfully causing or allowing Ekso to maintain inadequate internal controls and make false and misleading statements related thereto.

11. As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, Ekso has sustained damages including, but not limited, the costs associated with restating its 2016 financials, investigation its controls weaknesses, correcting said weaknesses, and losses in market capitalization.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over all claims pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interests or costs. The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

14. Venue is proper in this Court in accordance with 28 U.S.C. §1391 because one or more of the defendants either resides in or maintains executive offices in this District.

1    Furthermore, a substantial portion of the transactions and wrongs complained of herein,

2    including the defendants' primary participation in the wrongful acts detailed herein, occurred in

3    this District. Defendants have received substantial compensation in this District by doing

4    business here and engaging in numerous activities that had an effect in this District.

5            15.    In connection with the acts and conduct alleged herein, defendants, directly and

6    indirectly, used the means and instrumentalities of interstate commerce, including but not limited

7    to the United States mails, interstate telephone communications, and the facilities of the national

8    securities exchanges and markets.

9                                    **THE PARTIES**

10           16.    Plaintiff Dimitrula Henson has been a continuous stockholder of Ekso since

11   August 17, 2015 and is a citizen of South Carolina.

12           17.    Nominal defendant Ekso is a Nevada corporation and its principal executive

13   offices are located at 1414 Harbour Way South, Suite 1201, Richmond, California.  Ekso was

14   founded in 2005 under the name Berkeley Exoworks and changed to its current name in 2011.

15   Ekso's stock is publicly traded on the Nasdaq under the symbol EKSO.

16           18.    Defendant Jack Peurach ("Peurach") is a co-founder of Ekso.  He has served on

17   the Company's Board of Directors (the "Board") since January 2014.  Since March 9, 2018,

18   Peurach has been Ekso's Chief Executive Officer ("CEO") and President.  In conjunction with

19   being named CEO and President, Peurach resigned from his position as Chairman of the Board

20   and as a member of the Audit Committee and Compensation Committee.  However, he was a

21   member of both committees throughout the Relevant Period and remains a director.   Upon

22   information and belief, Peurach is a citizen of California.

23           19.    Defendant Russ Angold ("Angold") is a co-founder of Ekso and served as the

24   Company's Chief Technology Officer from December 2011 until he resigned on January 26,

25   2018 following the disclosure of Ekso's material weakness in internal controls.  During the

26   Relevant Period, while in possession of material, non-public information, Angold sold at least

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1  50,000 personally-held shares of Ekso stock at artificially-inflated prices for proceeds of
2  approximately $175,500.  Upon information and belief, Angold is a citizen of California.

3       20.    Defendant Maximilian F. Scheder-Bieschin ("Scheder") has been the Company's
4  Chief Financial Officer and Chief Accounting Officer since January 2014.  Upon information
5  and belief, Scheder is a citizen of California.

6       21.    Defendant Marilyn Hamilton ("Hamilton") has served on the Board since January
7  2012.  Hamilton is also a member of the Compensation Committee.  Upon information and
8  belief, Hamilton is a citizen of California.

9       22.    Defendant Steven Sherman ("Sherman") has served on the Board since December
10  2013.  Sherman is the Chairman of the Audit Committee and also a member of the Nominating
11  and Governance Committee.  Upon information and belief, Sherman is a citizen of Connecticut.

12       23.    Defendant Stanley Stern ("Stern") has served on the Board since 2014.  He is also
13  a member of Audit Committee.  Upon information and belief, Stern is a citizen of New York.

14       24.    Defendant Ted Wang ("Wang") has served on the Board of Directors since
15  September 22, 2017.  Upon information and belief, Wang is a citizen of New York.

16       25.    Defendant Tom Looby ("Looby") served on the Board and was CEO and
17  President of the Company until March 2018, when he resigned from both positions.  Upon
18  information and belief, Looby is a citizen of California.

19       26.    Defendant Howard Palefsky ("Palefsky") served on the Board until March 9,
20  2018.  Palefsky was also a member of the Nominating and Governance Committee.  He resigned
21  from the Board due to differences with other Board members over areas of corporate strategy.
22  Upon information and belief, Palefsky is a citizen of Georgia.

23       27.    Defendant Amy Wendell ("Wendell") served on the Board until March 9, 2018.
24  She was also a member of the Audit Committee.  She resigned from the Board due to differences
25  with other members of the Board over areas of corporate strategy.  Upon information and belief,
26  Wendell is a citizen of Massachusetts.

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

28.     Defendants Peurach, Angold, Scheder, Hamilton, Sherman, Stern, Wang, Looby, Palefsky, and Wendell are referred to herein as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     By reason of their positions as directors and/or officers, of Ekso and because of their ability to control its business and corporate affairs, the Individual Defendants owed Ekso and its stockholders fiduciary obligations of loyalty, good faith, due care, disclosure, candor, and oversight, and were and are required to use their utmost ability to control and manage Ekso in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Ekso and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interests or benefit.

30.     Each director and officer of the Company owes to Ekso and its stockholders the fiduciary duty to exercise good faith, loyalty, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and to uphold the highest obligations of fair dealing.

31.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Ekso, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

32.     To discharge their duties, the officers and directors of Ekso were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Ekso were required to, among other things:

(a)     properly and accurately guide stockholders and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's accounting and financial reporting would be true and accurate at all times;

- 6 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

(b)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations;

(c)     ensure that there were sufficient checks and balances in Ekso's accounting and finance functions, and related functions, to prevent accounting irregularities, internal control problems, and/or overstatement of income, revenues, and cash flow; and

(d)     ensure that no inaccurate financial information about Ekso was released to the public that would tend to artificially inflate Ekso's stock, and that would thus cause corresponding or greater harm to the Company's value when the truth was revealed.

33.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Ekso, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its stockholders.   The Individual Defendants were aware, or recklessly disregarded, that those violations, absences of good faith, and the reckless disregard of duties posed a risk of serious injury to the Company.

## SPECIFIC CORPORATE GOVERNANCE
## RESPONSIBILITIES OF THE INDIVIDUAL DEFENDANTS

34.     Ekso holds itself to specific corporate governance principles beyond the requirements of law.   For example, its Corporate Governance Guidelines describe the duties undertaken by the Board, as well as the active oversight role the Board played in its business affairs:

The principal responsibility of the directors is to oversee the management of the Company and, in so doing, serve the best interests of the Company and its stockholders. This responsibility includes:

• Reviewing and approving fundamental operating, financial and other corporate plans, strategies and objectives.
• Evaluating the performance of the Company and its senior executives and taking appropriate action, including removal, when warranted.
• Evaluating the Company's compensation programs on a regular basis and determining the compensation of its senior executives.
• Reviewing and approving senior executive succession plans.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

- Evaluating whether corporate resources are used only for appropriate business purposes.
- Establishing a corporate environment that promotes timely and effective disclosure (including robust and appropriate controls, procedures and incentives), fiscal accountability, high ethical standards and compliance with all applicable laws and regulations.
- Reviewing the Company's policies and practices with respect to risk assessment and risk management.
- Reviewing and approving material transactions and commitments not entered into in the ordinary course of business.
- Developing a corporate governance structure that allows and encourages the Board to fulfill its responsibilities.
- Providing advice and assistance to the Company's senior executives.
- Evaluating the overall effectiveness of the Board and its committees.

35.     Correspondingly, the Audit Committee Charter (the "Charter") specifies that:

The purpose of the Audit Committee of the Board of Directors (the "Board") of Ekso Bionics Holdings, Inc. (the "Company") is to assist the Board with oversight of the Company's accounting and financial reporting processes and the audit of the Company's financial statements.

36.     In addition, the Charter imposes the following duties on the members of the Audit Committee – defendants Peurach, Sherman, Stern, and Wendell – in a section labeled "Authorities and Responsibilities":

The Audit Committee shall discharge its responsibilities, and shall assess the information provided by the Company's management and the Company's registered public accounting firm (the "independent auditor"), in accordance with its business judgment. Management is responsible for the preparation, presentation, and integrity of the Company's financial statements, for the appropriateness of the accounting principles and reporting policies that are used by the Company and for establishing and maintaining adequate internal control over financial reporting. The Audit Committee shall review the Company's compliance with applicable laws and regulations and review and oversee any policies, procedures and programs designed to promote such compliance. The independent auditor is responsible for auditing the Company's financial statements and the Company's internal control over financial reporting and for reviewing the Company's unaudited interim financial statements. The authority and responsibilities set forth in this Charter do not reflect or create any duty or obligation of the Audit Committee to plan or conduct any audit, to determine or certify that the Company's financial statements are complete, accurate, fairly presented, or in accordance with generally accepted accounting principles or applicable law, or to guarantee the independent auditor's reports.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

37.    The Individual Defendants failed to maintain the standards laid out by both the law and themselves, resulting in the breaches of fiduciary duty described herein.

**SUBSTANTIVE ALLEGATIONS**

38.    Dating back to at least the beginning of 2016, the Individual Defendants caused or allowed Ekso to maintain deficient controls with regard to the Company's information technology general controls and segregation of duties.   The Individual Defendants failed to design and maintain processes and procedures to restrict access to key financial systems and records to appropriate users and did not appropriately evaluate whether there was an adequate segregation of duties.  Rather than quickly act to fix these issues, the Individual Defendants acted to cover them up by releasing false statements.

39.    Throughout 2017, the Individual Defendants caused the Company to consistently state in its filings with the SEC that Ekso's internal controls over its information technology and financial reporting were effective.

40.    For example, on March 15, 2017, the Individual Defendants caused Ekso to file its 2016 Annual Report with the SEC.  The 2016 Annual Report stated in relevant part:

> The Company's management assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 based on the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission in Internal Control—Integrated Framework (2013).  ***The Company's management believes that based on this criteria, as of December 31, 2016, the Company's internal control over financial reporting is effective.***   The effectiveness of our internal control over financial reporting as of December 31, 2016 has been audited by OUM LLP, an independent registered public accounting firm, as stated in their report, which appears under Item 8 of this Annual Report on Form 10-K.

(Emphasis added).

41.    Additionally, the 2016 Annual Report included a Report of Independent Registered Public Accounting Firm, signed by OUM, stating that "Ekso Bionics Holdings, Inc. maintained, in all material respects, effective internal control over financial reporting as of December 31, 2016 . . ."

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

42.     The 2016 Annual Report contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Looby and Scheder, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.  The 2016 Annual Report was also signed by defendants Looby, Scheder, Sherman, Hamilton, Peurach, Stern, and Wendell.

43.     Throughout 2017, in quarterly reports filed with the SEC, the Individual Defendants caused Ekso to state that there were no changes in the Company's internal control over financial reporting.  For example, on May 9, 2017, Ekso filed its first quarter report with the SEC, which stated, in relevant part:

> *Changes in Internal Control Over Financial Reporting*
> There were no changes in our internal control over financial reporting that occurred during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

44.     Ekso's second and third quarterly reports, filed with the SEC on August 7, 2017 and November 8, 2017, respectively, contained this same language, stating that there were no changes in Ekso's internal control over its financial reporting.  The quarterly reports contained signed SOX certifications by defendants Looby and Scheder, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     These statements were materially false and/or misleading because they misrepresented and/or failed to disclose that Ekso had a material weakness in its financial reporting due to a deficiency in its information technology general controls.

## THE TRUTH IS REVEALED

46.     On December 14, 2017, the Company filed a Form 8-K with the SEC.  The Form 8-K stated, in relevant part:

> On December 8, 2017, OUM & Co. LLP ("OUM") notified Ekso Bionics Holdings, Inc. (the "Company") that it had concluded that its report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 should no longer be relied upon and that a material weakness

- 10 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

in the Company's internal control over financial reporting existed as of such date. This material weakness has not resulted in a restatement of the Company's consolidated financial statements or footnote disclosures for any periods through and including the fiscal year ended December 31, 2016.

\*     \*     \*

As part of its original audit of the Company's financial statements included in the 2016 10-K, OUM assessed the Company's internal control over financial reporting as of December 31, 2016.   At that time, OUM and the Company concluded that the Company maintained effective internal control over financial reporting as of December 31, 2016.  Subsequent to the issuance of the 2016 10-K, the Public Company Accounting Oversight Board conducted an inspection of OUM's 2016 audit of the Company.   As a result, OUM reevaluated the Company's information technology (IT) general controls and has now concluded that a "material weakness" existed as of December 31, 2016.

As a result of the identified material weakness, OUM has performed additional testing on the Company's financial statements as of and for the year ended December 31, 2016 to reconfirm their opinion on the fairness of the financial statements included in the 2016 10-K without reliance on the effectiveness of the Company's internal controls.  As noted above, OUM has now reconfirmed its unqualified opinion on the fairness of the Company's financial statements included in the 2016 10-K.

After consultation with OUM, management has now concluded that the Company's internal control over financial reporting was not effective at December 31, 2016 and, accordingly, its disclosure controls and procedures were not effective at December 31, 2016 or for subsequent interim periods.

\*     \*     \*

We plan to amend our Annual Report on Form 10-K for the fiscal year ended December 31, 2016 and our Quarterly Reports on Form 10-Q for the periods ended March 31, 2017, June 30, 2017 and September 30, 2017 to reflect the conclusion by management that there was a material weakness in internal control over financial reporting and that our disclosure controls and procedures were not effective as of the end of the periods covered by these reports.  OUM's auditor's report on the Company's internal control over financial reporting will also be revised to state that the Company's internal control over financial reporting at December 31, 2016 was not effective.

47.     On December 27, 2017, the Company filed an amended 2016 Annual Report and amended quarterly reports for the first three quarters of 2017 with the SEC.  The amended 2016 Annual Report included an "explanatory note", which stated, in relevant part:

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

This Amendment No. 1 on Form 10-K/A (this "Amendment No. 1") amends the Original Filing for the sole purpose of (i) revising the Report of Independent Registered Public Accounting Firm of OUM (the "Auditor's ICFR Report") contained in Part II, Item 8 of the Original Filing regarding the effectiveness of our internal control over financial reporting and amending the Report of Independent Registered Public Accounting Firm of OUM contained in Part II, Item 8 of the Original Filing regarding our financial statements to reflect such revision of the Auditor's ICFR Report, (ii) revising the disclosure on the effectiveness of our disclosure controls and procedures and the disclosure on our internal control over financial reporting in Part II, Item 9A of the Original Filing to reflect management's conclusion that our internal control over financial reporting and disclosure controls and procedures were not effective at December 31, 2016, and (iii) revising Part I, Item 1A. Risk Factors of the Original Filing to reflect the material weakness in the Company's internal control over financial reporting identified subsequent to the Original Filing.

48.    The amended 2016 Annual Report continued by stating, in relevant part:

***Any failure to maintain effective internal control over our financial reporting could materially adversely affect us.***

Section 404 of the Sarbanes-Oxley Act of 2002 requires us to include in our annual reports on Form 10-K and quarterly reports on Form 10-Q an assessment by management of the effectiveness of our internal control over financial reporting. At the time that our Annual Report on Form 10-K for the year ended December 31, 2016 was filed on March 15, 2017, our principal executive officer and principal financial officer concluded that we maintained effective internal control over financial reporting as of such date.  Subsequent to the issuance of our original Annual Report on Form 10-K for the year ended December 31, 2016, the Public Company Accounting Oversight Board conducted an inspection of our independent registered public accounting firm, OUM & Co. LLP ("OUM").  As a result, OUM reevaluated the Company's information technology general controls, and concluded that a "material weakness" existed as of December 31, 2016.

After consultation with OUM, management also concluded that the Company's internal control over financial reporting was not effective at December 31, 2016.

As a natural course of business, management has, over the course of 2017, been working to further strengthen its internal controls.  Specifically, the Company has increased segregation of duties and implemented a more robust accounting and enterprise resource planning system (which became operational in October 2017).  While we believe that the policies, processes and procedures we have put in place over the course of 2017 will be sufficient to render our internal controls over financial reporting effective, our initiatives may not prove successful and management may not be able to conclude that our internal control over financial reporting is effective.  Furthermore, even if management were to reach such a conclusion, if our independent registered public accounting firm is not satisfied

with the adequacy of our internal control over financial reporting, or if the independent auditors interpret the requirements, rules or regulations differently than we do, then (if required in the future) they may decline to attest to management's assessment or may issue a report that is qualified.  Any of these events could result in a loss of investor confidence in the reliability of our financial statements, which in turn could negatively affect the price of our common stock.

In particular, we must perform system and process evaluation and testing of our internal control over financial reporting to allow management and our independent registered public accounting firm to report on the effectiveness of our internal control over financial reporting, as required by Section 404.  Our compliance with Section 404 may require that we incur substantial accounting expense and expend significant management efforts.

(Emphasis in original).

49.     In the accompanying amended "Report of Independent Registered Public Accounting Firm," OUM explained, in relevant part:

Ekso Bionics Holdings, Inc.'s management is responsible for maintaining effective internal control over financial reporting, and for its assessment of the effectiveness of internal control over financial reporting included in the accompanying report, Item 9A, *Management's Report on Internal Control Over Financial Reporting*.  Our responsibility is to express an opinion on the company's internal control over financial reporting based on our audit.

*      *      *

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.  A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1

\*        \*        \*

2   In our report dated March 14, 2017, we expressed an unqualified opinion that
3   Ekso Bionics Holdings, Inc. maintained, in all material respects, effective internal
    control over financial reporting as of December 31, 2016, based on the COSO
    [(Committee of Sponsoring Organizations of the Treadway Commission)] criteria.
4   Management has subsequently identified a deficiency related to the Company's
5   information technology (IT) general controls and segregation of duties, and has
    further concluded that such deficiency represented a material weakness as of
6   December 31, 2016.  As a result, management has restated its assessment, as
7   presented in the accompanying Management's Report on Internal Control Over
    Financial Reporting; to conclude that Ekso Bionics Holdings, Inc.'s internal
8   control over financial reporting was not effective as of December 31, 2016.
9   Accordingly, our present opinion on the effectiveness of the Company's internal
    control over financial reporting as of December 31, 2016, as expressed herein, is
    different from that expressed in our previous report.

10  A material weakness is a control deficiency, or combination of deficiencies, in
11  internal control over financial reporting, such that there is a reasonable possibility
12  that a material misstatement of the Company's annual or interim financial
    statements will not be prevented or detected on a timely basis.  The following
13  material weakness has been identified and included in management's assessment.
    Management identified a material weakness in internal control over financial
14  reporting relating to the Company's IT general controls and segregation of duties.
15  ***Specifically, the Company did not design and maintain processes and***
    ***procedures that restrict access to key financial systems and records to***
16  ***appropriate users, and the Company did not appropriately evaluate whether***
    ***there was an adequate segregation of duties.***   We have also audited, in
17  accordance with the standards of the Public Company Accounting Oversight
18  Board (United States), the consolidated balance sheets of Ekso Bionics Holdings,
    Inc. as of December 31, 2016 and 2015, and the related consolidated statements of
19  operations and comprehensive loss, stockholders' equity (deficit), and cash flows
20  for each of the three years in the period ended December 31, 2016.  This material
    weakness was considered in determining the nature, timing, and extent of audit
21  tests applied in our audit of the 2016 consolidated financial statements, and this
    report does not affect our report dated March 14, 2017 which expressed an
    unqualified opinion on those financial statements.
22
23   ***In our opinion, because of the effect of the material weakness described above***
     ***on the achievement of the objectives of the control criteria, Ekso Bionics***
     ***Holdings, Inc. has not maintained effective internal control over financial***
24   ***reporting*** as of December 31, 2016, based on COSO criteria.

25  (Emphasis added).

26

27

28

50.     The amended quarterly reports the Company filed with the SEC on December 27, 2017 repeated much of the information in the amended 2016 Annual Report.  Indeed, there was no new information added, and beyond this specific language, the amended reports all note that except with respect to the material weakness noted above, there were no other changes in Ekso's internal control over financial reporting.

51.     Stockholders of Ekso stock have been left to wonder which users accessed key financial systems and how a lack of segregation of duties has harmed the Company.

### INSIDER SELLING

52.     During the Relevant Period, while in possession of material, adverse, non-public information, defendant Angold took advantage of the artificially-inflated prices to sell his Ekso shares for substantial proceeds.  Specifically, as detailed below, the defendant Angold sold *more than $175 thousand* of personally-held Ekso common stock.

53.     Defendant Angold is a co-founder of the Company and was the Company's Chief Technology Officer during the Relevant Period.  Angold was aware of material, non-public information regarding the Company's technological controls and financial reporting, and the inaccuracy of Ekso's disclosures in the Company's press releases and public filings, including that Ekso's internal controls were inadequate.  While in possession of this information, Angold sold at least 50,000 personally-held shares of Ekso stock at artificially-inflated prices for proceeds of *more than $175 thousand*.  Angold's sales were timed to maximize profits from the Company's then artificially inflated stock price.

54.     These insider sales were executed under highly suspicious circumstances and occurred while the Company's stock price was artificially inflated due to the misrepresentations and omissions alleged herein.  Defendant Angold's sales during the Relevant Period included the sale of 50,000 shares of Ekso common stock on November 22, 2017 for $3.51 per share and total proceeds of $175,500.

**DAMAGES TO EKSO**

55.     Due to the Individual Defendants' wrongful conduct, Ekso disseminated false and misleading statements and omitted material information.  The improper statements about Ekso's effectiveness of internal controls devastated Ekso's credibility.   Ekso continues to suffer damages as a result of the Individual Defendants' misconduct.

56.     Indeed, the Individual Defendants' false and misleading statements as alleged above have subjected Ekso to the Securities Class Actions pending in this District.

57.     As a direct and proximate result of the Defendants' actions as alleged above, Ekso's market capitalization has been substantially damaged, losing over $143 million of dollars in value as a result of the conduct described herein.  At its peak during the Relevant Period, Ekso had a market cap of almost $250 million.  As of the filing of this complaint, it is approximately $106 million.

58.     Further, as a direct and proximate result of the Individual Defendants' conduct, Ekso has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

- costs incurred in investigating and defending Ekso and certain officers in the pending Securities Class Actions, plus potentially millions of dollars in settlement or to satisfy an adverse judgment; and
- costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on Ekso's artificially-inflated stock price.

59.     Moreover, these actions have irreparably damaged Ekso's corporate image and goodwill.  For at least the foreseeable future, Ekso will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Ekso's ability to raise equity capital or debt on favorable terms in the future is now impaired.

**PLAINTIFF'S DEMAND AND DERIVATIVE ALLEGATIONS**

60.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

61.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

62.     Plaintiff is an owner of Ekso common stock and was an owner of Ekso common stock at all times relevant hereto.

63.     Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

64.     As a result of the facts set forth herein, Plaintiff has not made any demand on Ekso's Board to institute this action against the Individual Defendants.  Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

65.     During the Relevant Period when the false and misleading statements were made, the Ekso Board consisted of eight members:  Peurach, Hamilton, Sherman, Stern, Wang, Looby, Palefsky, and Wendell.  All eight of those Board members would be incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

66.     The Board currently consists of six members: Peurach, Hamilton, Sherman, Stern, Wang, and non-defendant Charles Li.[1]  Five of these six members were on the Board throughout the Relevant Period and cannot make an independent or disinterested decision to institute or vigorously prosecute this action.

67.     Defendants Peurach, Hamilton, Sherman, Stern, and Wang face a substantial likelihood of liability for their individual misconduct, as they were directors throughout the time

---

[1]  Charles Li was appointed to the Board on March 11, 2018 and is not named as a defendant in this complaint.

1  of the inadequate internal controls, approved of the false and misleading statements, and had a

2  fiduciary duty to ensure that the Company's SEC filings were truthful and accurate.

3      68.    Furthermore, defendants Peurach, Hamilton, Sherman, Stern, and Wang owed a

4  duty to, in good faith and with due diligence, exercise reasonably inquiry, oversight, and

5  supervision to ensure that the Company's internal controls were effective.   Instead, they

6  knowingly reviewed, authorized, and/or caused the publication of the materially false and

7  misleading statements described herein.

8      69.    If defendants Peurach, Hamilton, Sherman, Stern, and Wang were to bring a suit

9  on behalf of Ekso to recover damages sustained as a result of this misconduct, they would expose

10  themselves to significant liability.  For this reason, demand is futile.

11      70.    Defendant Peurach's primary occupation is being Ekso' CEO and President.  As

12  an executive and a director, he is not independent.

13      71.    Additionally, defendant Peurach along with Stern, Sherman, and Wendell

14  comprised the Audit Committee during the Relevant Period.   As members of the Audit

15  Committee during the Relevant Period, Sherman, Peurach, Stern, and Wendell were responsible

16  for reviewing the Company's annual and quarterly reports to ensure their accuracy.  As they

17  failed to do this, Peurach is subject to liability for his actions and incapable of disinterestedly

18  considering a demand.  Therefore, demand upon him is futile.

19      72.    Defendant Hamilton served on the Board throughout the Relevant Period and

20  actively engaged in the wrongdoing by approving the false and misleading statements

21  complained of herein.

22      73.    Defendant Sherman is the Chairman of the Audit Committee, and along with

23  Peurach, Stern, and Wendell comprised the Audit Committee during the Relevant Period.  As

24  members of the Audit Committee during the Relevant Period, Sherman, Peurach, Stern, and

25  Wendell were responsible for reviewing the Company's annual and quarterly reports to ensure

26  their accuracy.  As they failed to do this, Sherman is subject to liability for his actions and

27  incapable of disinterestedly considering a demand.  Therefore, demand upon him is futile.

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

74.     Defendant Stern along with Peurach, Sherman, and Wendell comprised the Audit Committee during the Relevant Period.   As members of the Audit Committee during the Relevant Period, Sherman, Peurach, Stern, and Wendell were responsible for reviewing the Company's annual and quarterly reports to ensure their accuracy.   As they failed to do this, Stern is subject to liability for his actions and incapable of disinterestedly considering a demand. Therefore, demand upon him is futile.

75.     Furthermore, the Audit Committee was responsible for overseeing the integrity of the Company's financial systems and making sure the Company's internal controls were efficient and functional.   This alone makes the current directors who were on the Audit Committee throughout the Relevant Period – Peurach, Sherman, and Stern – incapable of disinterestedly considering a demand.

76.     Defendant Wang is not disinterested or independent, and therefore, is incapable of considering demand.   Wang, through a related vehicle, owns 20,543,898 shares of the Company stock or 34.3% of all the outstanding shares.   As a controlling stockholder, he cannot independently consider a demand.   Further, as someone who can almost single-handedly add or remove any of the directors via his voting power, none of the other directors can independently consider a demand against Wang.

77.     If Ekso's officers and directors are protected against personal liability for their breaches of fiduciary duties alleged in this complaint by Directors & Officers Liability Insurance ("D&O Insurance"), they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders.   However, Plaintiff is informed and believes that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by Ekso against the Individual Defendants, known as the "insured versus insured exclusion.

78.     As a result, if defendants Peurach, Hamilton, Sherman, Stern, and Wang were to sue themselves or certain of the officers or former directors of Ekso, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit.   On the

other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  Therefore, defendants Peurach, Hamilton, Sherman, Stern, and Wang cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

79.     Under the factual circumstances described herein, the Individual Defendants are more interested in protecting themselves than they are in protecting Ekso by prosecuting this action.  Therefore, demand on Ekso and its Board is futile and is excused.

80.     Ekso has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing.  Yet, defendants Peurach, Hamilton, Sherman, Stern, and Wang have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct.   Thus, defendants Peurach, Hamilton, Sherman, Stern, and Wang are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile

## FIRST CAUSE OF ACTION
### Against the Individual Defendants for Breach of Fiduciary Duty

81.     Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

82.     The Individual Defendants owed and owe Ekso fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe Ekso the highest obligation of good faith, fair dealing, loyalty, candor, and due care.

83.     All of the Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision.

84.     The Individual Defendants consciously caused or allowed Ekso to lack requisite internal controls, and as a result, the Company regularly made false and misleading statements regarding the effectiveness of the Company's internal control, or lack thereof, throughout the Relevant Period.

85.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Ekso has sustained significant and actual damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

86.     Plaintiff, on behalf of Ekso, has no adequate remedy at law.

SECOND CAUSE OF ACTION
(Against the Individual Defendants for Waste of Corporate Assets)

87.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

88.     As a result of the foregoing, and by failing to properly consider the interests of the Company and its public stockholders, the Individual Defendants have caused the Company to waste valuable corporate assets by failing to disclose:  (i) the Company had a material weakness in its internal control over financial reporting; (ii) the Company's disclosure controls and procedures were not effective; and (iii) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

89.     As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

90.     Plaintiff, on behalf of the Company, has no adequate remedy at law.

THIRD CAUSE OF ACTION
(Against the Defendant Angold for Insider Selling and Misappropriation of Information)

91.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

92.     At the time defendant Angold sold his Ekso stock, he knew the material, non-public information described above, and sold Ekso stock on the basis of such information.

93.     The information described above was proprietary, non-public information concerning the Company's business operations, financial condition, and growth prospects.  It was a proprietary asset belonging to the Company, which defendant Angold misappropriated to his own benefit when he sold personal holdings in Ekso stock.  Defendant Angold knew that this

- 21 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1    information was not intended to be available to the public.  Had such information been generally

2    available to the public, it would have significantly reduced the market price of Ekso stock.

3         94.    Defendant Angold's sale of stock while in possession and control of this material,

4    adverse, non-public information was a breach of his or her fiduciary duties of loyalty and good

5    faith.  Defendant Angold is therefore liable to Ekso for insider trading.

6         95.    Since the use of the Company's proprietary information for personal gain

7    constituted a breach of defendant Angold's fiduciary duties, the Company is entitled to the

8    imposition of a constructive trust on any profits he obtained thereby.

9         96.    Plaintiff, on behalf of Ekso, has no adequate remedy at law.

10                                    **PRAYER FOR RELIEF**

11        **WHEREFORE,** Plaintiff prays for relief and judgment as follows:

12        A.     Against the Individual Defendants in favor of the Company for the amount of

13   damages sustained by the Company as a result of the Individual Defendants' illegal insider stock

14   sales, breaches of fiduciary duties and waste of corporate assets;

15        B.     Directing Ekso to take all necessary action to reform and improve its corporate

16   governance and internal procedures to comply with applicable laws and to protect Ekso and its

17   stockholders from a repeat of the damaging events described herein, including, but not limited to,

18   putting forward for stockholder vote resolutions for amendments to the Company's By-Laws or

19   Articles of Incorporation, and taking such other action as may be necessary to place before

20   stockholders for a vote the following corporate governance proposals or policies:

21        • a proposal to strengthen the Board's supervision of operations and compliance

22          with applicable state and federal laws and regulations;

23        • a proposal to strengthen the Company's internal reporting and financial disclosure

24          controls;

25        • a provision to permit shareholders of Ekso to nominate at least three candidates

26          for election to the Board to replace existing directors;

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1
       •   a proposal to develop and implement procedures for greater shareholder input into

2
          the policies and guidelines of the Board;

3
       •   a proposal to ensure the accuracy of the qualifications of Ekso's directors,

4
          executives and other employees;

5
       •   a proposal to strengthen the Company's procedures for the receipt, retention, and

6
          treatment of complaints received by the Company regarding internal controls; and

7
       •   a provision to appropriately test and then strengthen the Company's internal

8
          operational control functions

9
     C.     Awarding to Plaintiff the costs and disbursements of the action, including

10
reasonable attorney's fees, accountants' and experts' fees, costs, and expenses; and

11
     D.     Granting such other and further relief as the Court deems just and proper.

12

**<u>JURY TRIAL DEMANDED</u>**

13
Plaintiff hereby demands a trial by jury.

14

15
Dated: June 11, 2018                     Respectfully submitted,

16
                                  **TOSTRUD LAW GROUP, P.C.**

17
                                  **By:** /s/ Jon A. Tostrud

18
                                     Jon A. Tostrud (CA Bar No. 199502)
                                   *jtostrud@tostrudlaw.com*

19
                                1925 Century Park East, Suite 2100

20
                                Los Angeles, CA 90067
                                Telephone: (310) 278-2600

21
                                Facsimile: (310) 278-2640

22
                                **BRAGAR EAGEL & SQUIRE, P.C.**

23
                                Melissa A. Fortunato (#319767)
                                *fortunato@bespc.com*

24
                                885 Third Avenue, Suite 3040
                                New York, New York 10022

25
                                Telephone: (212) 308-5858
                                Facsimile: (212) 486-0462

26

27
                              **HYNES KELLER & HERNANDEZ, LLC**
                                Michael J. Hynes

28

- 23 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*mhynes@hkh-lawfirm.com*
Ligaya T. Hernandez
   *lhernandez@hkh-lawfirm.com*
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: (484) 875-3116
Facsimile: (914) 752-3041

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**VERIFICATION**

I, DIMITRULA HENSON, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint, that I have reviewed the Verified Stockholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief.  I declare under penalty of perjury that the foregoing is true and correct.

June 11 , 2018

*Dimitrula Henson*
Dimitrula Henson (Jun 11, 2018)

Dimitrula Henson